May it please the Court, Justice Seguinza, for Petitioner in the Prasad matter. The issues presented before the Court this morning are whether there is substantial evidence to support the, quote, adverse credibility finding of the IJA. Could you speak up just a little bit? Whether there- Act as if you're in front of a bunch of bored twelfth graders and sort of speak up to get their attention. I will do that. Whether there was substantial evidence to support the IJA's, quote, adverse credibility finding- Why- Why- Why isn't- Why isn't not mentioning the first time about the shop being burned out like in Lee where the applicant failed to mention the first time about his wife being sterilized? Your Honor, we would submit that that was a minor admission, omission at best, adequately explained by the respondent during cross-examination. She- As I remember, her shop was burned out. She and this other lady had a shop and it was totally burned out. And she mentioned other things ranging from bad to horrible, but she didn't mention the shop being burned out- That's- In her written application and in her initial interview, she never mentioned the shop being burned out. Is that true? Yes. That's true. She did explain, though, on cross-examination that the central event that she claimed was the basis for her persecution was the sexual attack at the shop. The burning of the shop, admittedly, was not mentioned in either the I-589 application declaration or at the asylum office in- Yeah. It seems like a big deal. I mean, if my law office had been burnt out, that would be unforgettable. Well, Your Honor, we would submit that the attack itself was the main event that occurred to Petitioner and that prompted her to seek asylum in the United States. The shop incident happened after the sexual attack and she wasn't present at the time that the shop was burned down. She also explained that she had a layperson not experienced in preparing I-589 applications, apparently, who assisted her for free and that the declaration compiled with the help of the preparer was, in fact, a summary rather than an exact, detailed recitation of events. And I believe Petitioner also testified that there was a language difference between the interpreter and Petitioner. I believe the preparer spoke Punjabi or Hindi, Indian Hindi, rather, as opposed to Hindi, Fijian Hindi, and that could have accounted for the difference or the issue. That takes care of the written application, or at least that's an explanation for the written application. But what about the interview? The interview, she also explained that she had the assistance of an interpreter who spoke Punjabi rather than Hindi, and there are significant differences in terms of language and dialect between the two. Okay. Does she say, I told the interpreter my shop was burned out, but she didn't tell the officer? Well, I believe on cross-examination she said that the interpreter, quote, advised her to keep the answers short and succinct, yes or no answers, and did not relate to the asylum officer everything that Petitioner had stated in the interview, and that could have included the incident of the shop burning down. And that's how it was addressed on cross-examination. These events occurred during or immediately after the 2000 coup? Yes, it did. I believe the sexual attack occurred approximately five days after the coup in 2000, and the burning of the shop apparently two weeks after that. It's significant to note that both the IJ and trial counsel conceded that there was persecution if Petitioner was found credible, and the IJ also conceded that through country conditions articles, it did establish that the type of event that Petitioner claimed happened to her in Fiji was consistent with what was happening in Fiji at that particular time. So Petitioner submits that any inconsistencies that the IJ cited on the record were in fact not inconsistencies, and they were adequately explained by Petitioner on cross-examination. Can I go back to the series of questions that Judge Kleinfeld asked about the differences between the application, the asylum officer interview, and the testimony before the IJ? In summary form, she told us that she had explanations for both. Can you tell us whether the IJ addressed those explanations? And if you'd like to pick that up and rebuttal, you're welcome. Certainly, if I could do that. Sure. Thank you. Submitted that any inconsistencies, if in fact they were found inconsistencies rather than adequate explanations by the Petitioner were so minor and they weren't central to the heart of the claim, and the heart of the claim would be the sexual attack on Petitioner approximately five days after the coup. Was corroborative evidence required in such a situation? Petitioner submits that it was not required because her testimony was sufficiently detailed, consistent and plausible to support a claim for asylum. If corroborative evidence was required by way of argument, we submit that that corroborative evidence was not reasonably available to Petitioner at that time. I cite to the court two examples. Petitioner stated that after the attack, the sexual attack, she sought medical help. She obtained a receipt from the doctor, but in the course of events after the attack, this place of her loss wasn't available to her. She tried through family to obtain medical records from the doctor, but apparently the doctor had relocated to Australia and those records were not available. She made a good faith effort to try to obtain that. This matter of the business license, all business documents that Petitioner had with her partner were apparently lost when the shop was burned. And there was some comment on the record by the IJ as to whether or not Petitioner should have obtained a business license or a copy of the license from the licensing authorities in Fiji, but submitted that there is no evidence in the record that anyone asked her about whether she made such an attempt, and if she did not make such an attempt, the reason why. So we would submit that the evidence is not clear on the record as to that particular matter. I would submit, Your Honor, that there are no inconsistencies here in Petitioner's testimony, and if there are inconsistencies, they are, in fact, minor. They don't go to the heart of the claim, and corroborative evidence in this situation is not required because Petitioner's testimony was sufficiently detailed, plausible, and consistent and merits the finding of asylum, and I'll reserve. Thank you. Thank you, Counsel. Good morning. My name is Kurt Larson. I represent the Attorney General in this case. The lack of credibility coupled with the failure to produce corroborative evidence caused the Petitioner's claim to fail. Counsel, on the corroborative evidence, I was kind of unimpressed with that. I mean, I hardly ever get anything in writing from my doctor unless he gives me a prescription. It just doesn't seem like you'd ordinarily have something in writing when you left the doctor's office. You wouldn't have a document that proved you were raped, especially in a place like Fiji where the police are the problem. The thing that really impressed me on this case is not mentioning that a shop was burned down. The first either in her application or in her interview, she gave explanations for why she didn't mention it. Could you discuss why those explanations do not require a reversal of the finding of lack of credibility? Yes, Your Honor. Concerning why she didn't write down that the store being burned down, she stated that, again, as the Petitioner's counsel pointed out, there was interpretation difficulties that the person that was advising her on those issues told her to say yes or no, so on and so forth. But as the immigration judge pointed out, especially in the asylum application, six changes were made. The asylum application was presented and then six changes were made prior to submitting it. And when the immigration judge specifically reviewed the application with the Petitioner, he said, okay, last time to change this, do you have any changes, and went through certain things and changed it four more times. So there were ten changes prior to the point that it was actually being submitted. How central was this to her claim? Please go back into the testimony. That's exactly the first thing she said. Tell me about your claim, my store burned down. Let me ask you a couple of questions about that. The way this asylum application is written, it has chosen to focus on what she calls my ordeal, which is the rape by a police officer. That is what she has chosen to describe as the basis for asylum. And possibly because she knows the police were involved. But in the background section, right before that, there's a description of not only the coup, but it talks about how houses were set on fire and women were raped. And then it has the sentence, my family also has some humiliating experiences of that time. So the way I read that was the fires and all that was kind of background to this rape. So I guess I didn't even really view it as left out, I viewed it as having been swept into the sort of background information. People's houses were set on fire, all this stuff happened, and my family had some of that too, but now let me tell you about the rape. So why is the application even inconsistent? It doesn't give detail about it, but it does suggest that some of those fires and other things had happened to her family, but now I'm going to tell you about when the policeman raped me. Why is that inconsistent? It's absolutely inconsistent. It's interesting that you bring that up, I guess I look at it a different way. You tell me in a preamble, a lot of things happened in Fiji. Houses were burned and people were raped. What happened to you? I was raped.  No, no, no. But what is that, but there's that last sentence of the background section that suggests that some of that had happened to her family as well. And she could have easily said that in her application. She states it in a preamble to all this, saying this is the background information that happened here. Specifically, I'm telling you some background information that happened throughout Fiji, that happened to a lot of Fijians. Now I'm going to tell you what happened to me, explicitly to me, and what happened to me was I was raped and my place was burned down. I guess I look at it a completely different way. I'm prepping myself. If I tell you, okay, you're from Fiji. I learned in Fiji that houses were burned and individuals were raped. Tell me what happened to you. And you say, I was raped. That's it? That's it. And then five months later you come back and say, my house was burned too. But that's not what it says. That's exactly my problem with your argument. The last sentence of the section on background suggests that her family suffered the same background stuff prior to the ordeal, prior to the rape. And I guess I just don't see how that, even though it doesn't give the same detail, I don't understand why that isn't completely consistent with what she claims was the advice that was given to her to focus on the thing that the policeman did to her. The burden is on the petitioner, number one. Number two, the questions about the individual. Well, the burden is on the petitioner, but it's also the I.J. who disbelieves someone has some burden to explain that in a way that makes sense. The way he explained it was, he said, I noticed the first thing that you said. It wasn't a female I.J.? Yes, ma'am. Okay. The first thing that I.J. stated was that you had plenty of time to review your asylum application. You made six changes and we made four here in court. The very first thing out of your mouth when I asked you what's the background to all this, you stated that your house burned or your store burned. Very first thing. Their business, wasn't it? Yes, ma'am. Not a house. Store. Store. Yeah. And the burning of businesses in the aftermath and the events surrounding the 2000 coup is mentioned in the State Department country report, isn't it? It's also mentioned by the immigration judge. Immigration judge stated, hey, I'm looking at the background notes, I'm looking at what I know about Fiji and I know this kind of stuff happened. I understand that. But the testimony that you've given me today is not credible. Let me also answer one thing. Going back to the corroborative evidence, Your Honor, you stated that looking at the corroborative evidence, you don't think that she should have submitted the medical documentation. In fact, I think you'll see that the immigration judge discounted the medical stuff, saying I understand that the individual doctor that you went to go see has moved to Australia. I'm not too worried about that. What I am worried about is that you were in business for two years with an individual. You could have called her, gotten an affidavit from her, gotten some business documents showing that you had a business, or two, you stated to me that you actually had to get a business license. So there's got to be some record of that somewhere. Why didn't you get it? So I think that the immigration judge kind of discounted the medical documents and focused more on the corroborative evidence with the documentation concerning the business. Subject to questions, that concludes my argument. Thank you. Thank you. Your Honor, I had asked whether V.I.J. had addressed Petitioner directly or in her decision     She had not. She had not. She had not. I noticed in her application, she mentions that she was looted. She doesn't just talk about the rape. She says, I was harassed, humiliated, beaten, looted, raped. So she mentions that she was looted. And it just seems funny to me. She'd mention looting, but she wouldn't mention the business being burned out, the business  So I don't know. Your Honor, we would submit that the attack, the physical attack that she sustained Page 324, I'm talking about. Yes. We would submit that the physical attack that she sustained or experienced in Fiji was so horrific and so traumatic that other incidents pale in comparison, relatively speaking. And it would be understandable for her to minimize, if you will, other events that happened to her and concentrate on what happened to her that day in the shop, about five days after the coup in 2000. Just one other matter, if I may, Your Honor. V.I.J. referred to testimony, quote, in the extremes, and she cited a couple of examples that Petitioner testified that there was no system of land dispute resolution with respect to the lease on the shop and that native Fijians took everything that they wanted to, and that there was no help for Indo-Fijians by either police or other government authorities. We would submit that that is, in fact, should not be characterized as extreme. It only reflects her personal belief and her opinion as to what was happening to her and in Fiji at that time and should not be construed as a negative, if you will, to support an adverse credibility finding. And if there are no further questions, I'll submit. Thank you, counsel. Thank you.
judges: Kleinfeld, Hawkins, Graber